**In re B.H. SMARTT, Debtor.**

**and**

**In re SMARTT CONSTRUCTION CO., Debtor.**

**Bankruptcy Nos. 88 B 17915 E, 88 B 17916 E.**

United States Bankruptcy Court, D. Colorado.

Aug. 14, 1990.

---

James R. Chadderdon, Colorado Springs, Colo., as trustee and for trustee.

Paul T. Gefreh, Colorado Springs, Colo., Special Counsel for trustee.

## ORDER ON FEE APPLICATIONS

CHARLES E. MATHESON, Chief Judge.

Applications were filed in these two estates by Mr. James R. Chadderdon seeking compensation both for his services as Trustee and for the services that he performed in his capacity as attorney for the Trustee. Similarly, applications have been filed for compensation by Mr. Paul T. Gefreh in his role as special counsel for the Trustee in each estate.

In support of the fee applications in each case, there was submitted to the Court a memorandum. That memorandum set forth certain information and background concerning the Debtors and their relationships. It was disclosed that Mr. Smartt and his wife, who is not a debtor in any proceedings before this Court, owned the vast majority of Smartt Construction Co. stock. The exact percentage is not set forth.

The memorandum contained the following specific disclosure:

Mr. Smartt's individual and company business interests are deeply intertwined. Also his business interests and his company's business interests were closely interconnected with nine general and limited partnerships engaged in the commercial real estate business of which either he, his company or both were the general partners. All eleven of the Smartt business entities were managed and accounted for from Mr. Smartt's Colorado Springs office. These nine entities often loaned each other money, paid each others [sic] bills and sometimes guaranteed each others [sic] obligations. At times, the real estate assets of one were pledged as collateral for the loans of another.

This Court was concerned, from the disclosures made, about the prospects for conflicts of interests. From the representations made in the memorandum the Court observed that:

the Trustee in each of these estates may have claims against the other estates, including claims framed around fraudulent or preferential transfers. The question then arises as to whether Mr. Chadderdon and/or Mr. Gefreh are, in fact, representing interests which are adverse to each estate. Joint Order for Hearing and for Allowance of Fees, March 19, 1990, p. 3 ("Joint Order").

Accordingly, the Court set the fee applications for hearing.

The matter currently before the Court is the second fee application in this case. In response to the Joint Order which set the same for hearing, the Trustee submitted a supplemental memorandum. The supplemental memorandum pointed out that at the time the initial application for interim compensation was filed the following disclosures were made to the Court:

*Estate Administration*

Mr. Smartt operated his business activities "as a whole" often ignoring whether he or Smartt Construction Co. was the owner of a certain property. Further, the Trustee's review of the transactions between Mr. Smartt and Smartt Construction Co. shows that each estate has obligations to the other. B.H. Smartt and Smartt Construction maintained corresponding inter-company "open accounts" with each other on their respective general ledgers. Also, both estates are often joint owners of the same real estate or are both general partners of the same real estate investment partnership.

As a result of this, a majority of the Trustee's efforts in administering these two filing [sic] has involved matters common to both estates. This joint approach to administration has saved an enormous amount of duplication of effort and expense to both estates. In situations where expenses of administration have not been clearly applicable to one estate, the Trustee has allocated the costs of such "joint administration" equally between the estates.

As a means of approaching the problem of obligations between the two estates, the Trustee proposes to evaluate and analyze each of such obligations and present to the Court for its analysis and approval a proposal for mutual offset of such debts and obligations. In order to properly address possible conflict of interests between the two estates in this regard, the Trustee's presentation will provide detailed information about the basis for each obligation so that the Court and the creditors of each estate may fully evaluate and be heard on any issue surrounding the Trustee's proposed offset.

 The analysis of the issues before the Court must focus separately on the status of Mr. Chadderdon as Trustee and Mr. Chadderdon in his role as counsel for the Trustee. As Trustee, Mr. Chadderdon was qualified to be appointed as trustee provided that he was "disinterested." 11 U.S.C. § 701(a)(1). The term "disinterested" is defined in the Code in section 101(13). The focus of that section is not on the interest to be represented by the trustee, but on any disqualifying interest held by the trustee. Further, it has been recognized that, while the trustee must be free of any scintilla of personal interest, the trustee does not become interested by reason of his appointment as trustee in two related estates. *In re Realty Associates Securities Corp.*, 56 F.Supp. 1007 (E.D.N.Y.1944). *In re O.P.M. Leasing Services, Inc.*, 16 B.R. 932 (Bankr. S.D.N.Y.1982). There is nothing to indicate that Mr. Chadderdon was "interested" at the time of his appointment and he was, therefore, qualified to be appointed as Trustee in these cases.

The Bankruptcy Rules recognize that in cases involving a debtor and an affiliate; i.e., a corporation and its president or a substantial stockholder, the Court may order a joint administration of the estates. B.R. 1015(b). The Rules also recognize that in such cases, a single trustee may be appointed to administer both estates. B.R. 2009. However, the Rules also recognize the potential for conflicts of interest between two such estates and, in the event

such a conflict exists, the Rules provide as follows:

> (d) *Potential conflicts of interest.* On a showing that creditors or equity security holders of the different estates will be prejudiced by conflicts of interest of a common trustee, the court shall order separate trustees for estates being jointly administered.

 The disclosures made to the Court indicate the lengths being taken by Mr. Chadderdon, as Trustee in each estate, to fulfill his fiduciary obligations and to reach the basis of a common accounting between both estates. While there are obvious conflicts of interest which arise in these circumstances, there is no evidence before the Court to indicate that Mr. Chadderdon has conflicts such that the Court must conclude that the creditors "will be prejudiced." Such a state of affairs may yet arise, but at this time the evidence before the Court does not mandate such a finding and the Court therefore concludes that Mr. Chadderdon need not be removed as a trustee in one or both of these estates and may properly be compensated for his services.

 Mr. Gefreh, for his part, has been engaged to represent these estates only with respect to certain specific litigation. There is no indication that he has been acting in any matters where there is a conflict between the two estates nor has he been engaged in representing interests which might be considered to be adverse to either estate. Thus, the Court concludes that the services that he has provided as counsel appointed under section 327 of the Code may properly be compensated. 11 U.S.C. § 328(c).

The role of Mr. Chadderdon as attorney for himself as Trustee presents different problems for the Court. Pursuant to section 327(a), the Trustee is entitled to employ an attorney that does not "hold or represent an interest adverse to the estate" and who is "disinterested." The Code further provides that the Court may authorize the Trustee to act as his own attorney "if such authorization is in the best interest of the estate." 11 U.S.C. § 327(d).

As the Court has observed, there is nothing to indicate that at the time he was appointed Mr. Chadderdon, himself, held interests in these estates of any kind. Of course, by reason of being a trustee, he was interested but it would appear that section 327(d) avoids that impediment to his serving as his own counsel. The more difficult issue is whether Mr. Chadderdon represents interests that are "adverse to the estate" within the meaning of section 327(a).

The District Court in this District has adopted perhaps the most stringent position under section 327(a) of any court in the country. In the case of *In re Ginco, Inc.,* 105 B.R. 620 (D.Colo.1988), the District Court concluded that an attorney could not represent the trustee where the attorney also represented another party against whom the trustee might have a potential future claim even though that claim was not at issue in the matter for which the attorney was hired. The Court held that the Bankruptcy Court must "adhere to the literal language of section 327(a)...." In reaching that conclusion, the District Court relied on, and cited as examples, the cases of *Bohack Corp. v. Gulf & Western Industries, Inc.,* 607 F.2d 258 (2d Cir.1979) (counsel was disqualified based upon a potential conflict of interest created by the dual representation of a debtor corporation and its chairman of the board); *In re Johore Investment Co., Inc.,* 41 B.R. 318 (Bankr.D.Hawaii 1984) (special counsel was not permitted to represent both the debtor corporation and its principal owner); *Roger J. Au & Son, Inc. v. Aetna Ins. Co.,* 64 B.R. 600 (Bankr.N.D.Ohio 1986) (an attorney was not permitted to simultaneously represent the debtor corporation and its sole shareholder).

This Court has recently had occasion to deal with the problem of the common representation of multiple debtors. In an opinion handed down in the case of *In re Amdura Corp.,* 121 B.R. 862 (Bankr.D.Colo.1990), this Court concluded that debtors' counsel could not represent the parent corporation and its subsidiaries where there were multiple inter-company claims. Recently, other courts have similarly dealt with the problem of the representation of related entitles and have concluded that section 327(a) of the Code bars such representation. *See In re Lee,* 94 B.R. 172 (Bankr.S.D.Cal.1988); *In re Vanderbilt Associates Ltd.,* 111 B.R. 347 (Bankr.D.Utah 1990). Similarly, in the case of *In re Proof of the Pudding, Inc.,* 3 B.R. 645 (S.D.N.Y.1980), the court found that one law firm could not represent the creditors' committees for three related entities because of the inability of the law firm to properly investigate and inquire into the inter-company debts owed among the entities.

The standards of section 327 of the Code are more severe than those imposed under section 701 for the appointment of the trustee and under Bankruptcy Rule 2009(d) concerning the role of the trustee in jointly administered cases. A trustee can act in joint cases even where there is a conflict provided there is no evidence that there actually will be prejudice to the creditors. Under section 327, however, an attorney is disqualified if he represents an interest which is potentially adverse to the estate. *In re Ginco, supra.*

Subsection (c) of section 327 softens the standard of section 327(a) by permitting a professional to represent both a creditor of an estate and the trustee, unless there is an actual conflict of interest. Obviously, there is always some conflict of interest created by reason of the debtor/creditor relationship. What this section recognizes, however, is that such a conflict ought not to be disqualifying where there is clearly no dispute concerning the existence of the debt and the amount.

In the present case, by the disclosures of the Trustee, there clearly are debts and credits flowing back and forth between these two estates. Perhaps the existence of such claims, by themselves, would not disqualify Mr. Chadderdon from serving as the attorney in both estates. There is more, however, as is disclosed in the first memorandum filed in this case. There it is disclosed that both estates have often been joint owners of the same real

estate or are both general partners of the same real estate investment partnerships. The representation of such diverse interests necessarily involves the balancing of the interest of one estate against the other under circumstances where there are conflicts of interest and the estates are adverse. *See In re Vanderbilt Associates Ltd., supra.* The Court must conclude that Mr. Chadderdon, by acting as attorney in both estates, of necessity represents interests that are adverse to the respective estates and is, therefore, disqualified to act as counsel pursuant to section 327(a).

Until this point in time, Mr. Chadderdon has served as counsel pursuant to the orders of this Court. The potential for conflicts should have been apparent to the Court at the time the appointment was made. Further, the range of potential conflicts was clearly disclosed in the first memorandum in support of the first interim fee application. Similarly, in the second fee application Mr. Chadderdon has freely disclosed his role. That role has continued while these issues have been under advisement.

■ Where counsel has been appointed contrary to the provisions of section 327(a), due to the failure of counsel to fully disclose his potential conflicts of interest, this Court has concluded that it is appropriate to deny all fees. *In re Sixth Avenue Car Care Center,* 81 B.R. 628 (Bankr. D.Colo.1988). This is clearly not such a case. In cases such as the one before the Court, it has been recognized that the Court need not, in all instances, deny all fees to the attorney. *In re Roberts,* 75 B.R. 402 (D.Utah 1987). The Court finds that it would be an unwarranted and unjustified hardship under the circumstances of this case to impose such a penalty on Mr. Chadderdon.

■ The Court has reviewed the fee applications and had commented in its Joint Order setting these matters for hearing about the number of entries for time spent by Mr. Chadderdon in conference with Mr. Gefreh. It is asserted that this has only been done when there have been issues of such complexity and financial importance that it warranted a careful and detailed analysis by two attorneys. The Court is unwilling to accept such a statement. It is simply not permissible for a trustee to hire himself as his attorney and then to hire another attorney and for both to bill the estate for time spent in mutual conferences. The records reflect that in the B.H. Smartt bankruptcy case some 7.2 hours were spent by Mr. Chadderdon in consultation with Mr. Gefreh. In the Smartt Construction bankruptcy case 8.2 hours were so spent in conferences. The billings in each case shall be reduced by that amount.

Having considered the applications presented and for the reasons herein stated, it is therefore

ORDERED, that there shall be allowed reimbursement and fees to the applicants as follows:

1. *Smartt Construction Co., Case No. 88 B 17916 E.*

A. James R. Chadderdon, Trustee—$6,487 for Fees and $74.87 for Administration Expenses.

B. James R. Chadderdon, Attorney for Trustee—$2,598 for Fees.

C. Paul T. Gefreh, Attorney for Trustee—$3,112.50 for Fees.

2. *B.H. Smartt, Case No. 88 B 17915 E.*

A. James R. Chadderdon, Trustee—$1,925.03 for Fees and $34.75 for Administration Expenses.

B. James R. Chadderdon, Attorney for Trustee—$2,320 for Fees.

C. Paul T. Gefreh, Attorney for Trustee—$1,905.83 for Fees; and it is

FURTHER ORDERED, that James R. Chadderdon shall, within ten (10) days from the date of entry of this order, withdraw as counsel for the Trustee in one of these two estates and file such notice of withdrawal with the Court; and it is

FURTHER ORDERED, that this Court's order shall be without prejudice to the right of Mr. Chadderdon to apply for fees for services provided as the attorney for

the Trustee in both estates to the date of entry of this order; and it is

FURTHER ORDERED, that the fees hereby allowed are interim fees only and subject to re-examination *sua sponte* by the Court or upon the request of any party in interest at any time before final orders enter in these estates.